UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | Case No. 24-CR-0063 (DSD/JFD) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Charles Winston, Jr., | |
| Defendant. | |

---

This case is before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1 for a report and recommendation on Defendant Charles Winston, Jr.'s motions to suppress evidence and statement (Dkt. Nos. 23, 24) in connection with his charge for possession with the intent to distribute a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

The Court held a motion hearing on July 2, 2024. Assistant United States Attorneys Allen Slaughter and Carla Baumel represented the Government. Assistant Federal Defender Jean Brandl represented Mr. Winston. Sergeant Christian Howse of the Hennepin County Sheriff's Office testified for the prosecution, and Mr. Winston testified in his own defense.

**I.   Background**

On January 31, 2024, around 1:30 P.M., Sgt. Howse stopped a silver 2007 Chevrolet Impala in Golden Valley, Minnesota, for having excessively tinted windows. Sgt. Howse

1

observed the vehicle for several blocks, but did not notice any signs of erratic driving or indications that the driver might be under the influence. Upon stopping the vehicle, Sgt. Howse approached from the passenger side, where Mr. Winston's teenage son was seated, and explained the reason for the stop.

Sgt. Howse testified that he noticed the smell of burnt marijuana and saw what appeared to be burnt marijuana cigarettes, known as "roaches," in the center console area.[1] Sgt. Howse then asked for identification from both Mr. Winston and his son, stating that his request was due to the presence of the alleged marijuana roaches.

Sgt. Howse ran Mr. Winston's identification through the National Crime Information Center (NCIC) database, which showed that Mr. Winston was on federal supervised release and state probation for a second-degree drug offense. Based on this information and his observations, Sgt. Howse decided to search the Impala and called for back-up.

Returning to the Impala, Sgt. Howse asked Mr. Winston to get out of the car; Mr. Winston's son also got out of the car at Mr. Winston's instruction. Sgt. Howse

---

[1] The defense highlights the fact that Sgt. Howse did not mention the smell of marijuana immediately and also did not include it in his initial report. Sgt. Howse testified, however, that he did not think it was necessary in light of his observation of the marijuana roaches. Footage from his body camera introduced as an exhibit at the hearing also shows Mr. Winston verbally confirmed that the objects in his car were marijuana roaches and that he did so at the scene and before the search.

At the motion hearing, Mr. Winston also testified about the roaches. He explained that they were not from marijuana cigarettes, but Al Capone cigars, a thin cigarillo brand rolled with brown paper. The defense submitted a box of Al Capone cigars as an exhibit, as well as pictures of the cigars' burned stubs, which look similar to the roaches Sgt. Howse observed. Mr. Winston's testimony contradicts his statements made at the scene of the stop.

discussed the reason for the search with Mr. Winston and began to conduct the search shortly after that discussion, when joined by another officer.

During the search, Sgt. Howse found a small plastic bag containing cannabis and two additional bags of white powder in the center console. Mr. Winston claimed the white powder was laundry detergent and asked for it to be tested, which Sgt. Howse declined to do at the scene for safety reasons. Other items found in the vehicle included a digital scale, razor blades, small amounts of cash, and a plastic straw.

Following the search, Mr. Winston was handcuffed, arrested, and transported to the Violent Offender Task Force building in downtown Minneapolis. The white powder found in the Impala was later tested and turned out not to contain illegal narcotics. The Government ultimately charged Mr. Winston with one count of possession with intent to distribute cocaine, however, based on narcotics discovered later in Sgt. Howse's squad car.

Mr. Winston has moved to suppress the evidence obtained from the traffic stop and his statements made in connection with the seizure of the same evidence for violation of his rights under the Fourth Amendment to the United States Constitution.

## II.   Legal Standards

The Fourth Amendment protects against unreasonable searches and seizures by the government. U.S. Const. amend. IV. "A traffic stop constitutes a seizure under the Fourth Amendment." *United States v. Peralez*, 526 F.3d 1115, 1119 (8th Cir. 2008). Law enforcement officers "may stop a vehicle if they have an articulable and reasonable suspicion that a traffic violation has occurred, even if the traffic violation is only minor." *United States v. Beard*, 708 F.3d 1062, 1065 (8th Cir. 2013); *see also Rodriguez v. United*

*States*, 575 U.S. 348, 354 (2015) ("A seizure for a traffic violation justifies a police investigation of that violation.").

Once a traffic stop is lawfully initiated, "[b]eyond determining whether to issue a traffic ticket," an officer may conduct additional ordinary inquiries that "serve the same objective as enforcement of the traffic code." *Rodriguez*, 575 U.S. at 355. This includes "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* An officer may conduct other unrelated checks into criminal activity beyond the traffic infraction, but "he may not do so in a way that prolongs the stop, absent . . . reasonable suspicion." *Id.*; *see also United States v. Magallon*, 984 F.3d 1263, 1278 (8th Cir. 2021) ("law enforcement must be 'reasonably diligent' in carrying out that mission"). Accordingly, "if an officer's unrelated investigations extend the traffic stop beyond the time reasonably required to achieve the mission of issuing a ticket, he must have reasonable suspicion of some other criminal activity." *United States v. Betts*, 88 F.4th 769, 773 (8th Cir. 2023).

Reasonable suspicion is based on the totality of the circumstances and requires a "particularized and objective basis" for suspecting legal wrongdoing before a stop can be justified. *United States v. Patrick*, 776 F.3d 951, 954 (8th Cir. 2015) (quoting *United States v. Cortez*, 449 U.S. 411, 417); *accord United States v. Brown*, 60 F.4th 1179, 1182 (8th Cir. 2023) ("In analyzing whether an officer had reasonable suspicion, [courts] look to the totality of the circumstances."). A reasonable suspicion is "some minimal, objective justification" for suspicion beyond an "inchoate hunch." *United States v. Fuse*, 391 F.3d

4

924, 929 (8th Cir. 2004). This standard thus requires the government to "point to specific, articulable facts that reasonably suggest a crime." *United States v. Bustos-Torres*, 396 F.3d 935, 942 (8th Cir. 2005).

If evidence at a traffic stop is "obtained through a Fourth Amendment violation [it] is normally subject to exclusion." *United States v. Forjan*, 66 F.4th 739, 748 (8th Cir. 2023). This rule extends to "evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree,'" including any statements. *United States v. Tuton*, 893 F.3d 562, 568 (8th Cir. 2018) (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984)).

### III. Analysis

Mr. Winston does not challenge the validity of Sgt. Howse's traffic stop itself, only its expansion and subsequent search. (*See* Dkt. No. 35 at 4.) He maintains that Sgt. Howse's belief that he was looking at marijuana roaches fails to establish reasonable suspicion to expand the stop because the record does not support an objectively reasonable determination that the items Sgt. Howse saw were in fact contraband. (*Id.* at 5.)

The Government, in turn, argues that "standing alone, Sgt. Howse's immediate visualization of the burnt marijuana roaches supplied probable cause to search Mr. Winston's Impala." (Dkt. No. 38 at 10 (citing *United States v. Booker*, 269 F.3d 930 (8th Cir. 2001)).) *Booker*, indeed, makes clear that there was no Fourth Amendment violation here.

In *Booker*, law enforcement stopped the defendant for speeding and discovered that the defendant's driver's license was invalid, though the defendant claimed to have

5

paperwork proving otherwise. 269 F.3d at 931. While retrieving such paperwork from the vehicle, the trooper noticed cannabis residue, prompting a search of the vehicle with a drug-detecting dog. *Id.* The search led to the discovery of crack cocaine in the console and more marijuana residue in the cup-holder. *Id.*

The district court declined to suppress the evidence as it found there was probable cause to search the vehicle. *Id.* The Eighth Circuit affirmed, holding that the district court's crediting of the testimony of the officer that he observed cannabis and application of the plain-view doctrine were not clearly erroneous. *Id.* at 932.

Here, the facts are practically identical. Sgt. Howse stopped Mr. Winston's vehicle for a violation of a state law forbidding excessively tinted windows. Mr. Winston has not challenged the legality of that traffic stop. And, immediately following the stop, before Sgt. Howse even began talking to Mr. Winston, he observed marijuana roaches in plain view in Mr. Winston's vehicle. As in *Booker*, "[t]hat sighting generated probable cause to justify the subsequent search of the [vehicle]." *See id.*

The defense points out that the roaches were seized and placed into evidence, but never tested to determine whether they were in fact marijuana. (Dkt. No. 35 at 2.) But that is irrelevant—because "[t]he determination of whether probable cause existed is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time." *United States v. Sanders*, 196 F.3d 910, 913 (8th Cir. 1999); *see United States v. Peltier*, 217 F.3d 608, 610 (8th Cir. 2000) (holding the fact that officer's belief proved to be mistaken does not negate a finding of probable cause). During the stop, Mr. Winston himself confirmed that the roaches were marijuana; his possession charge,

6

however, is not based on them. There was thus no reason to test the roaches to confirm the presence of marijuana. The failure on the part of the United States to run that test provides no basis to undermine a finding of probable cause, nor does it in any other way justify exclusion of the evidence here.

Having determined that the sighting of marijuana roaches generated probable cause to justify the search of Mr. Winston's vehicle, the Court concludes that Mr. Winston's motions to suppress should be denied on that basis and does not need to consider the parties' remaining arguments.

## IV.   Recommendation

Based on the foregoing and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Defendant Charles Winston, Jr.'s Motion to Suppress Evidence (Dkt. No. 23) be **DENIED**; and

2. Defendant Charles Winston, Jr.'s Motion to Suppress Statement (Dkt. No. 24) be **DENIED**.

Date: September 4, 2024

*s/ John F. Docherty   .*
JOHN F. DOCHERTY
United States Magistrate Judge

## NOTICE

**Filing Objections**: The Report and Recommendation is not an order or judgment of the District Court and therefore is not appealable directly to the Eighth Circuit Court of Appeals. Pursuant to District of Minnesota Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report and Recommendation within 14 days. A

party may respond to objections within 14 days of being served a copy. All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).