## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | |
| Plaintiff, | Case. No. 24-cr-63(DSD/JFD) |
| v. | **ORDER DENYING MOTION TO REOPEN DETENTION HEARING** |
| Charles Winston, Jr., | |
| Defendant. | |

This matter is before the Court on Defendant Charles Winston, Jr.'s Motion to Reopen Detention (Dkt. No. 40), and the United States' Response in Opposition to that motion (Dkt. No. 41). For the reasons that follow, the Motion is denied.

### PROCEDURAL HISTORY

On March 6, 2024, the grand jury returned an indictment (Dkt. No. 1) charging Mr. Winston with possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). This offense does not have as an element the possession of any minimum amount of cocaine. Under the Bail Reform Act, this crime carries with it a presumption that no condition or combination of conditions will safely assure the safety of any other person or the community or the appearance of the defendant in court as required. 18 U.S.C. § 3142(e)(3)(A). The United States moved to have Mr. Winston detained without bond pending trial. (Initial Appearance Minutes, Dkt. No. 8)

Mr. Winston appeared before Magistrate Judge Wright on March 13, 2024 for a hearing on the detention motion. U.S. Pretrial Services recommended detention. One clause of one sentenced in the Pretrial Services Report, apparently quoting a law enforcement report, stated that "about 23 grams of cocaine" had been found in Mr. Winston's car following a traffic stop. (Pretrial Services Report, Dkt. No. 10, at 6) Mr. Winston also was alleged to have been in possession of an additional 69 grams of cocaine. (*Id.*)[1]  He had a long criminal record and at the time of his arrest, Mr. Winston was on federal supervised release for a fraud conviction. During his supervised release, according to Pretrial Services, he had "failed to submit to drug testing, failed to make restitution payments, failed to abstain from illicit substance use, and failed to remain law abiding." (*Id.*)

Magistrate Judge Wright ordered Mr. Winston detained. (Ord. of Detention, Dkt. No. 16) Magistrate Judge Wright analyzed the issue of detention or release both under the standards applicable to a person accused of a crime and under the standards of a person on federal supervised release who is alleged to have violated his conditions of release. (*Id.* at 3) Magistrate Judge Wright found that no condition or combination of conditions of release would reasonably assure the safety of any person or the community and also found that by clear and convincing evidence Mr. Winston had violated his terms of supervised release. Magistrate Judge Wright focused "[i]n particular, . . . the weight of the evidence

---

[1] The Report of U.S. Probation and Pretrial Services is sealed. In this Order, the Court uses only information in the report that is sourced to publicly-available material, such as police reports and court records. Pretrial's recommendation for detention was made public at the detention hearing. The Court does not disclose any personal information concerning Mr. Winston.

2

as proffered by the Government and the reports filed by United States Probation and Pretrial Services. . . ." On the grounds of danger to the community, Mr. Winston was ordered detained. Magistrate Judge Wright made "no finding as to the risk of nonappearance." (*Id.*)

## LEGAL STANDARD

Under the Bail Reform Act, a detention hearing may be reopened "at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue [of detention]." 18 U.S.C. § 3142(f).

## ANALYSIS

Mr. Winston moves to reopen his detention hearing on the grounds that the white powder found in a white baggie on the center console of his car turned out not to be cocaine, and that the cocaine found in the squad car used to transport him was not found for more than six hours after Mr. Winston had been in the squad. The test results of the white powder from the center console constitute "information that was not known to the movant at the time of the hearing." It is not clear whether the lapse of time between Mr. Winston's presence in the squad car and the discovery of cocaine is newly-discovered information or is information that was not known at the time of the original detention hearing. The Court gives Mr. Winston the benefit of the doubt and will treat the lapse of time information as new information.

Neither singly nor together, though, would this information have "a material bearing on the issue [of detention]." This is so even though Magistrate Judge Wright, in ordering detention, explicitly focused on the strength of the prosecution's case and both these new developments arguably reduce either the quantity of the prosecution's evidence (in the case of the white baggie on the console) or its persuasiveness (in the sense that the time lapse opens the door to a defense argument that someone other than Mr. Winston is responsible for secreting cocaine in the squad car). However, as the United States proffers in its Opposition (Dkt. No. 41 at 3) to Mr. Winston's Motion, the white powder on the console is consistent with cutting agents. The United States does not address the time lapse in its Opposition. However, in a supplemental report by Sergeant Howse that is attached to Mr. Winston's Motion, the Sergeant notes that the white powder had been pushed through a partition in the back seat and had landed in the squad's trunk, where the baggie ripped, leaving white powder on a weapons case in the trunk. Sergeant Howse stated that he spoke to the previous user of the squad, Sergeant Olson, who said the trunk and the back seat had both been clean when he used the squad. As to some other person being in the back seat and being the true source of the cocaine, Sergeant Howse noted that Mr. Winston's had been the only arrest he made on his shift. The materiality of the time lapse evidence therefore seems slight.

The Court also notes that Magistrate Judge Wright also considered that Mr. Winston was on federal supervised release at the time of his arrest on the charge in the indictment. Denial of the Mr. Winston's Motion is fully justified by the fact that Mr. Winston has not

met his burden of coming forward with newly-discovered, material evidence, and on that ground alone, his Motion is denied. But although neither the United States nor Mr. Winston has noted this in their motion papers, the Court points out that pursuant to Fed. R. Crim. P. 32(b)(6), when a magistrate judge is considering detention or release of a defendant who is alleged to have violated the terms of his supervised release, "[t]he burden of establishing by clear and convincing evidence that the person will not flee or pose a danger to any other person or to the community rests with the person." At least until the allegations against Mr. Winston of supervised release violations are decided – which the Court recognizes may occur before the adjudication of the charge in the indictment – it is Mr. Winston's burden, not the burden of the United States, to show that he is neither a flight risk nor a risk of danger, and to do so by clear and convincing evidence.

## CONCLUSION

For the foregoing reasons, Mr. Winston's Motion for Reconsideration of Detention is denied.

Dated: September 30, 2024

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge